**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
VICTORIA DIVISION**

| | | |
|---|---|---|
| In re: | § | Chapter 7 |
| | § | |
| KMCO, LLC, | § | Case No. 20-60028 |
| | § | |
| Debtor. | § | |
| | § | |
| | § | |

**TRUSTEE'S EMERGENCY MOTION FOR ENTRY OF AN ORDER
APPROVING THE SALE OF FACILITIES LOCATED IN CROSBY, TEXAS FREE
AND CLEAR OF LIENS CLAIMS, INTERESTS, ENCUMBRANCES, AND
GRANTING RELATED RELIEF**

**THIS MOTION SEEKS AN ORDER THAT MAY ADVERSELY AFFECT YOU. IF YOU OPPOSE THE MOTION, YOU SHOULD IMMEDIATELY CONTACT THE MOVING PARTY TO RESOLVE THE DISPUTE. IF YOU AND THE MOVING PARTY CANNOT AGREE, YOU MUST FILE A RESPONSE AND SEND A COPY TO THE MOVING PARTY. YOU MUST FILE AND SERVE YOUR RESPONSE WITHIN 21 DAYS OF THE DATE THIS WAS SERVED ON YOU. YOUR RESPONSE MUST STATE WHY THE MOTION SHOULD NOT BE GRANTED. IF YOU DO NOT FILE A TIMELY RESPONSE, THE RELIEF MAY BE GRANTED WITHOUT FURTHER NOTICE TO YOU. IF YOU OPPOSE THE MOTION AND HAVE NOT REACHED AN AGREEMENT, YOU MUST ATTEND THE HEARING. UNLESS THE PARTIES AGREE OTHERWISE, THE COURT MAY CONSIDER EVIDENCE AT THE HEARING AND MAY DECIDE THE MOTION AT THE HEARING.**

**REPRESENTED PARTIES SHOULD ACT THROUGH THEIR ATTORNEY.**

**EMERGENCY RELIEF HAS BEEN REQUESTED. IF THE COURT CONSIDERS THE MOTION ON AN EMERGENCY BASIS, THEN YOU WILL HAVE LESS THAN 21 DAYS TO ANSWER. IF YOU OBJECT TO THE REQUESTED RELIEF OR IF YOU BELIEVE THAT THE EMERGENCY CONSIDERATION IS NOT WARRANTED, YOU SHOULD FILE AN IMMEDIATE RESPONSE.**

**RELIEF IS REQUEST NOT LATER THAN MAY 27, 2020.**

TO THE HONORABLE CHRISTOPHER M. LOPEZ UNITED STATES BANKRUPTCY JUDGE:

Christopher R. Murray, Chapter 7 Trustee (the "**Trustee**") hereby files this *Emergency Motion for Entry of Order Approving the Sale of Facilities Located in Crosby, Texas Free and Clear of Liens, Claims, Interests, and Encumbrances, and Granting Related Relief* (the "**Motion**") and respectfully states as follows in support of the Motion.

## SUMMARY

1.      The Trustee seeks the Court's approval of the sale of substantially all of the real and personal property located in Crosby, Texas (the "**Property**") belonging to the bankruptcy estate (the "**Estate**," or the "**Seller**") of KMCO, LLC ("**KMCO**," or the "**Debtor**") free and clear of all liens, claims, and encumbrances on an emergency basis to ALTIVIA Oxide Chemicals, LLC (the "**Purchaser**").

2.      The Purchaser is an experienced operator and manager of chemical plants of substantial size and complexity. It is willing immediately take on the property and the responsibilities associated with monitoring the Debtor's facilities and safely operating them. The Purchaser is also willing to take on future risks associated with the Property and will be explicitly assuming environmental and tax obligations associated with a chemical plant that no other party has shown interest in acquiring. In short, the Trustee believes that the Purchaser is the only party who is likely to assume these obligations in such a short timeframe, and absent a quick sale, the only other alternative to the sale is attempting to turn over the Property to the state or federal authorities for remediation.

3.      The Trustee has determined that the transaction is in the best interest of the Debtor and its estates. The takeover of the Property by the Purchaser will not only ensure proper monitoring, but it will serve to save the jobs of those currently monitoring the Property, ensure the safety of the resident and environment surrounding the Property, and provide an opportunity for revitalization of

the plant creation of new jobs. While the Trustee understands the sales process and notice of it to parties in interest is unusually short, there is simply no alternative sale process available due to the Estate's lack of resources to ensure that the Property does not pose a safety hazard to the public.

4.      Although the proposed sale will only provide a relatively small amount of cash consideration to the Estate, the shortened time frame of the sales process serves to preserve value through the elimination of future expenses.  The Estate currently has $430,000 of unencumbered cash that it will use to operate the Property pending the sale.  To the extent that the Trustee does not expend these funds to operate the Property, it will be available for the benefit of the Estate and its creditors.  Moreover, the Estate will retain any causes of action, so additional potential value will be preserved for creditors.

5.      As described below, the senior secured creditor holding liens on the majority of the Property has consented to the sale.  There is an additional secured creditor, Cadence Bank, N.A. ("**Cadence**"), claiming a first lien on the inventory, but the Trustee believes that parties will reach agreement by the date of the hearing. If Cadence does not ultimately consent, the Purchaser has agreed to remove the inventory from the Property being transferred through the sale.

6.      There are several contractors that claim to hold liens arising under the Texas Property Code (collectively, the "**M&M Liens**"), but due to the senior secured creditors' claims, the M&M Liens are actually unsecured claims that pose no viable obstacle to a sale under section 363(f)(5). Additionally, the Trustee (b) anticipates that some or all of them will consent to the proposed sale; or (b) hold liens that are subject to a bona fide dispute. As a result, the requirements of section 363(f) of the Bankruptcy Code are satisfied, permitting a free and clear sale of the Facilities.

7.      Thus, the Trustee requests that the Court enter the proposed form of order approving the sale of the Property pursuant to section 363(f) of the Bankruptcy Code.

## JURISDICTION, VENUE, AND AUTHORITY

8.      The Court has jurisdiction over this motion pursuant to 28 U.S.C. § 1334.  This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b).  Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

9.      The statutory bases for the relief requested herein are sections 105 and 363 of title 11 of the United States Code (the "**Bankruptcy Code**"), and Rules 2002, 6004, 6006, 9007, and 9014 of the Federal Rules of Bankruptcy Procedures (the "**Bankruptcy Rules**") and the Local Bankruptcy Rules for the Southern District of Texas. (the "**Local Rules**").

10.      This Court has constitutional authority to enter final orders with respect to the relief requested herein.  The Trustee further confirms his consent to this Court's entry of final orders or judgments on this motion if it is later determined that, in the absence of the consent of the parties, this Court does not have constitutional authority to enter final orders or judgments.

## BACKGROUND

11.      The Debtor operated a specialty chemical plant in Crosby, Texas (the "**Facility**").  On April 2, 2019, an explosion and fire occurred at the Facility, which effectively ended the Debtor's business operations beyond basic inventory management and administrative functions.  Currently, the Facility contains flammable and hazardous chemicals, which must be safely and securely managed, but lacks the financial resources to keep the Facility safely functioning for an extended period.  As a result, the Debtor filed a voluntary petition for relief under chapter 7 of the Bankruptcy Code on May 8, 2020 (the "**Petition Date**").

### II.      THE PREPETITION MARKETING PROCESS

12.      On or about June 17, 2019, Balmoral Advisors, LLC ("**Balmoral**") was retained as KMCO's investment banker and initially pursued a dual-track strategy, marketing the Property on KMCO's behalf, as well as negotiating an alternative restructuring transaction with KMCO's existing

lenders and equity interest holders.  Since that date, Balmoral prepared marketing and diligence materials and canvassed the market for potential buyers, while advising KMCO existing stakeholders regarding potential transactions.

13.     After considering a wide range of potential strategic alternatives, Balmoral and KMCO ultimately determined that a sale of all or substantially all of KMCO's Property would yield the most value for the benefit of stakeholders.  Although Balmoral aggressively marketed the Property and reached out to multiple potential purchasers, over the course of approximately 10 months, no parties expressed serious interest in purchasing the Property other than the Purchaser.

14.     The Agreement of Sale and Purchase (the "**Agreement**"),[1] described below, is the product of extensive marketing efforts and arm's-length negotiations.  The Trustee believes that the timely sale of the Property in accordance with the Agreement is the best way to maximize value for the benefit of the Estate.

### III.    TERMS OF THE PROPOSED SALE

15.     On May 8, 2020, the Debtor and Purchaser executed the Agreement, under which, the Debtor agreed to transfer to the Purchaser all of its real property, vehicles, tangible personal property, inventories, licenses, intellectual property, and a limited conveyance of specified causes of action arising under section the Bankruptcy Code or applicable law (the "**Transferred Avoidance Actions**") Ex. B,  § 1.1.  Under the Agreement, the Estate would retain certain excluded assets, such as the Debtor's cash, accounts receivable, books and records, contracts, and tax assets. Ex. B; Section 1.2].

16.     The Purchaser also agreed to assume certain liabilities on behalf of the Estate, including payment of 2019 past-due property taxes (approximately $622,000 as of the Petition Date), removal of remaining inventory and hazardous waste, and all environmental liabilities that run with

---

[1]    A copy of the Agreement is attached as **Exhibit A**.

the conveyance of the Estate's real property (collectively, the "**Assumed Liabilities**") [Agreement; Section 1.4, Schedule 1.4(a)]. With the exception of the Assumed Liabilities, the terms of the Agreement require that the sale be free and clear of any lien, claim, or encumbrance, except for certain limited, permitted encumbrances [Agreement; Section 1.1].

17.     Since the Petition Date, the Trustee has conferred with the Purchaser regarding the terms of the Agreement.  The Purchaser has agreed to eliminate the Transferred Avoidance Actions from the conveyance, and to have such modification reflected in any Order approving the Motion that is entered by this Court. In addition, the Purchaser has further agreed that the inventory will be excluded from the sale in the event that Cadence does not consent to the relief sought herein.

### IV.   ENCUMBRANCES ON THE ESTATE'S PROPERTY

18.     The Trustee has determined that certain parties may hold an interest in the Estate's Property.  The Trustee believes that these interests are limited to two senior mortgages/liens and a few subordinate M&M Liens.   One senior security holder, BSP Agency, LLC ("**BSP**"), holds a mortgage on the real property and a blanket lien against the Debtors' assets and has consented to the proposed sale.  The Trustee is in continued discussions with Cadence and believes Cadence and the Trustee can ultimately reach agreement.  And each of the remaining alleged M&M Liens have either consented to the proposed sale, do not hold a secured interest that would preclude a free and clear sale, or hold liens that are subject to bona fide disputes.

19.     In June 2017, to refinance the Facility, KMCO entered into a credit agreement with BSP, as administrative agent to a group of lenders (the "**BSP Credit Agreement**"), secured by substantially all of KMCO's real and personal property.  BSP recorded a corresponding deed of trust in the Harris County Real Property Records office on July 3, 2017.  As of the Petition Date, KMCO owed BSP approximately $36,088,814.02 under the BSP Credit Agreement.  BSP has consented to the sale.

20.     As part of the Facility's refinancing, KMCO also entered into a credit agreement (the "**Cadence Credit Agreement**") with Cadence, which was secured by a lien on KMCO's accounts receivable and inventory on June 30, 2017. As of the Petition Date, KMCO owed approximately $3,861,839.54 under the Cadence Agreement.  Cadence has not yet consented to the sale, which includes KMCO's inventory.  In the event that Cadence does not ultimately consent to the proposed sale, the Purchaser has agreed to eliminate the inventory from the Property and allow Cadence thirty days to pick up the inventory from the Facility.

21.     On January 11, 2018, Gator Specialty Services, LLC ("**Gator**") attempted to perfect a first lien against KMCO under the Texas Property Code by filing an affidavit that alleged Gator provided for $167,882.00 of goods and services to KMCO.  KMCO retained Gator in July 2017 to perform pipe fabrication and construction work.  However, shortly thereafter, Gator advised KMCO that it would not perform its contractual obligations as a result of its own financial issues.  Despite multiple demands[2] from KMCO, Gator walked off the job, forcing KMCO to hire a replacement contractor and incur significant expense.

22.     On May 22, 2019, U.S. Fire Pump Company, LLC ("*U.S. Fire*") attempted to perfect a lien against KMCO under the Texas Property Code by filing an affidavit that alleged that U.S. Fire provided for $1,122,985.51 of goods and services to KMCO.  However, U.S. Fire's lien is subject to litigation in *U.S. Fire Pump Company. v. KMCO, LLC* (Cause No. 4:1-cv-02857, pending in the United States District Court for the Southern District of Texas).  Moreover, U.S. Fire has consented to release its M&M Lien so the proposed transaction may be completed.

23.     On September 10, 2019, Chube's Equipment, Co. ("**Chube's**") attempted to perfect a lien against KMCO under the Texas Property Code by filing an affidavit that alleged that Chube's

---

[2]     A copy of the demand letter from KMCO to Gator is attached as **Exhibit B** of this Motion.

provided $104,082.19 of goods and services to KMCO.  Chube's was hired as a subcontractor to provide Mesa Mechanical, Inc. ("**Mesa**") with scaffolding to perform work at the Facility.  However, Chube's abandoned the scaffolding at the Facility, where it remains to date.  Despite KMCO's repeated requests that Chube's or Mesa remove the scaffolding, neither attempted to contact the Debtor, allowing rental charges to accrue and failing to mitigate the Debtor's damages.

24.     On September 13, 2019, Mesa attempted to perfect a lien against KMCO under the Texas Property Code by filing an affidavit that alleged Mesa provided for $677,465.68 of goods and services to KMCO.  However, Mesa's lien is currently subject to pending litigation in *Mesa Mechanical, Inc. v. KMCO, LLC* (Cause No. 2019-78298, pending in the 125th District Court of Harris County).  Throughout 2019, KMCO paid Mesa more than $2.7 million but disputes that it owes the amounts Mesa claimed in its M&M Lien.  Further, Mesa failed to provide KMCO with certifications that Mesa's work was performed to code as required under applicable contracts.  Mesa also failed to mitigate KMCO's damages by failing to remove the scaffolding of its subcontractor, Chube's, as described above.  As a result, a bona fide dispute of fact and law exists regarding Mesa's alleged M&M Lien.  The Trustee understands that Mesa is alleging that a portion of its lien has a first priority lien on assets that are determined to be "removables" under Texas law.[3]  The Trustee further understands that the Debtor and Mesa do not agree on the existence of any removables, which creates an additional bona fide dispute.  However, the Trustee has conferred with the Purchaser, who has agreed to allow Mesa to take possession of any items that are determined to be removables after the sale.

---

[3] Texas law "grants a priority to a mechanic's lien on improvements over a prior lien, encumbrance, or mortgage on the land when the improvements made could be removed without material injury to the land and pre-existing improvements or to the improvements themselves." *CGI GP, LLC v. Stewart Title Gaur. Co.*, 290 S.W.3d 287, 295 (Tex. App.—Houston [1st] 2009, no pet.).

25.     On September 13, 2019, DeJean Company and Service & Maintenance, Inc. ("**DeJean**") attempted to perfect a lien against the Debtor under the Texas Property Code by filing an affidavit that alleged it provided for $274,367.83 of goods and services to KMCO.

26.     On November 14, 2019, Majesty Investments, LLC ("**Majesty**") attempted to perfect a lien against KMCO under the Texas Property Code by filing an affidavit that alleged Majesty provided for $15,670.70 of goods and services to KMCO.  The Trustee has contacted counsel for Majesty concerning their claim, but as of the date of the Motion, does not know if Majesty will affirmatively consent to the sale.

## V.     FURTHER JUSTIFICATION FOR APPROVING THE PROPOSED SALE

27.     In addition to the legal basis for authorizing the transaction, the community as a whole will benefit from the proposed sale to the Purchaser.  The Facility currently houses hazardous inventory, which poses a risk to the public at large, the environment, and the Debtor's employees. The costs and labor required to maintain the Facility and safely store these chemicals are simply too great for the Estate to sustain for a prolonged period.  The Trustee currently believes that he has sufficient funds to operate the Facilities for a limited time, but after those funds run out, the Facilities could pose a major risk for the surrounding community and environment.

28.     The proposed transaction would transfer ownership of the Estate's Property to the Purchaser, an experienced operator and manager of chemical plants of substantial size and complexity (including experience in rehabilitating one such facility that has been idle).  The Trustee understands that the Purchaser has an exemplary safety record and the skills required to turn the Property into a thriving chemical manufacturing facility again.  As set forth in the Agreement, the Purchaser has agreed to perform certain Assumed Liabilities, which include the removal of hazardous waste, payment of past-due taxes, and compliance with all required regulations and requirements that run with the Property.  Thus, the sale would result in a reduction in the risk associated with the Property,

surety of continued employment for the Debtor's remaining employees, and the possibility of additional jobs at the Facilities in the future.

29.     In sum, the Trustee believes that the proposed sale will benefit the community as whole, bringing the Facility back to life, providing a source of steady employment, and improving the safety of the surrounding area.  This transaction would also benefit the Estate, placing the Property in the capable hands of the Purchaser, while allowing the Trustee to minimize costs and focus on maximizing value for the Estate and its creditors.

**BASIS FOR RELIEF**

**I.     THE PROPOSED SALE IS AN EXERCISE OF THE TRUSTEE'S SOUND BUSINESS JUDGMENT**

30.     Bankruptcy Code section 363(b) does not specify a standard for determining when it is appropriate for a court to authorize the use, sale, or lease of property of the estate; however, bankruptcy courts have required that the authorization of such use, sale, or lease of property of the estate out of the ordinary course of business be based upon sound business justification. *See Institutional Creditors of Continental Air Lines, Inc. v. Continental Air Lines, Inc., et al. (In re Continental Air Lines, Inc.)*, 780 F.2d 1223, 1226 (5th Cir. 1986) ("[F]or a debtor-in-possession or trustee to satisfy its fiduciary duty to the debtor, creditors and equity holders, there must be some articulated business justification for using, selling, or leasing the property outside the ordinary course of business."); *see also In re ASARCO, L.L.C.*, 650 F.3d 593, 601 (5th Cir. 2011); *In re Cowin*, No. 13-30984, 2014 WL 1168714, at *38 (Bankr. S.D. Tex. Mar. 21, 2014). Once the Trustee articulates a valid business justification, "[t]he business judgment rule is a presumption that in making the business decision the directors of a corporation acted on an informed basis, in good faith and in the honest belief that the action was in the best interests of the company." *In re S.N.A. Nut Co.*, 86 B.R. 98 (Bankr. N.D. Ill. 1995); *see also In re Integrated Res., Inc.*, 147 B.R. 650, 656 (Bankr. S.D.N.Y. 1992); *In re JohnsManville Corp.*, 60 B.R. 612,

615–16 (Bankr. S.D.N.Y. 1986) (". . . a presumption of reasonableness attaches to a Debtor's management decisions.").

31.     The Trustee has a sound business justification for selling and assigning the Property under the terms outlined above. The Estate does not have sufficient capital to appropriately monitor the Facility for any prolonged period, thereby preventing the Trustee from conducting a more comprehensive marketing of the property. But even if this were not the case, the Trustee does not believe he would be able to locate additional interested bidders and negotiate a sale that would result in a greater benefit to the Estate given the time and expense associated with operations.  The Debtor previously undertook a substantial and comprehensive marketing campaign using an investment banker experienced in handling the sale of similar assets.  Given that that process only resulted in one interested buyer, there is little reason to believe that additional marketing by the Trustee would result in a better offer, particularly given the current state of the market.  Entering into the transaction will: (a) ensure that the monitoring of the Facility continues uninterrupted, thereby ensuring the safety of nearby residents; (b) relieve the Estate of significant environmental and tax liabilities; (c) result in a small benefit to the estate in the form of a cash payment; (c) allow the Trustee to preserve unencumbered cash by avoiding continued operating expense; and (d) ensure that the Debtor's employees retain their jobs while allowing for the opportunity that the sale will result in additional future positions at the Facility.

32.     Although the sales process is shorter than in other cases, the exigencies here justify the process.  The Facility suffered significant damage as a result of the April 2019 incident. As a result, any party willing to purchase the Property must be willing to immediately step in immediately to monitor the assets. Although the Trustee could monitor the Facility for a limited time, it appears unlikely he would be able to identify another qualified purchaser before the Estate's funds were

exhausted. Selling the Property now will ensure that the Facility does not go unmonitored, while simultaneously maximizing unencumbered cash for the benefit of the Estate and its creditors.

## II.   THE COURT MAY AUTHORIZE THE SALE FREE AND CLEAR OF LIENS, CLAIMS, OR ENCUMBRANCES

33.    Under the Bankruptcy Code, the Court may authorize the sale of bankruptcy estate property outside of the normal course of business and free and clear of any interest if:

(1) applicable nonbankruptcy law permits sale of such property free and clear of such interest;

(2) such entity consents;

(3) such interest is a lien and the price at which such property is to be sold is greater than the aggregate value of all liens on such property;

(4) such interest is in a *bona fide* dispute; or

(5) such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest.

The Trustee submits that this Court may authorize the sale free and clear of liens, claims, and encumbrances under these provisions.

34.    As a preliminary matter, BSP has indicated its consent to the proposed sale, satisfying section 363(f)(2). Furthermore, the Trustee has spoken with counsel for U.S. Fire, who indicated that U.S. Fire does not intend to oppose the sale. Cadence has not yet consented to the sale, but even if it does not, the Purchaser has agreed to remove the inventory from the sale and provide Cadence with thirty days to remove the inventory that it claims a lien on from the Facility.  As a result, the only

question is whether or not the Trustee can satisfy the requirements of section 363(f) for the remaining M&M Liens by Gator, Mesa, Chube's, Majesty, and DeJean.[4]

35.     Texas law would permit the sale free and clear of the M&M Liens, thereby satisfying section 363(f)(5). *In re Boston Generating, LLC,* 440 B.R. 302, 332 (Bankr. S.D.N.Y. 2010) ("[B]ecause the Second Lien Lenders could be compelled under state law to accept general unsecured claims to the extent the sale proceeds are not sufficient to pay their claims in full, section 363(f)(5) is satisfied."); *In re Jolan, Inc.*, 403 B.R. 866, 869-70 (Bankr. W.D. Wash. 2009) ("Because there are in Washington legal and equitable proceedings by which lienholders may be compelled to accept money satisfactions, § 363(f)(5) here permits a sale free and clear of liens . . . ."); s*ee also Diversified Mortg. v. Lloyd D. Blaylock, Etc.,* 576 S.W.2d 794, 808 (Tex. 1978) (holding that foreclosure of a senior deed of trust extinguished junior mechanic's lien). Even assuming that all statutory requirements were met, the M&M Liens would not have priority over BSP or Cadence's interests based on the fact that the senior secured creditors perfected their claims first. *First Fed. Sav. & Loan Ass'n of Beaumont v. Steward Title Co.*, 732 S.W.2d 98, 108 (Tex. App.—Beaumont 1987, writ denied) ("The Deed of Trust liens or mortgages, if recorded prior to the inception of the mechanics' liens, did not become subordinate to the mechanics' liens."). Because BSP is undersecured, the M&M Liens are necessarily fully unsecured.  11 U.S.C. § 506(a)(1) (stating that a creditor has "an unsecured claim to the extent the value of such creditor's interest . . . is less than the amount of such allowed claim.").  And because Texas law would permit a

---

[4] If no party objects to the relief requested in the Motion, the Trustee submits that consent exists to the proposed sale under section 363(f)(2) of the Bankruptcy Code. *See Futuresource LLC v. Reuters Ltd.*, 312 F.3d 281, 285-86 (7th Cir. 2002) ("It is true that the Bankruptcy Code limits the conditions under which an interest can be extinguished by a bankruptcy sale, but one of those conditions is the consent of the interest holder, and lack of objection (provided of course there is notice) counts as consent."); *Hargrave v. Township of Pemberton (In re Tabone, Inc.)*, 175 B.R. 855, 858 (Bankr. D.N.J. 1994) (failure to object to sale free and clear of liens, claims and encumbrances satisfies section 363(f)(2)); *In re Porras*, No. 95-30583, 2001 WL 871286, at *3 (Bankr. W.D. Tex. July 9, 2001); *In re New Orleans Paddlewheels, Inc.*, No. 06-10413, 2007 WL 1035151, at *3 (Bankr. E.D. La. Apr. 2, 2007).

sale that would extinguish these junior liens, this Court can approve a free and clear sale over an objection of the M&M Liens under section 363(f)(5).   *See Diversified Mortg. v. Lloyd D. Blaylock, Etc.,* 576 S.W.2d at 808.

36.     Gator, Mesa, and Chube's M&M Liens are subject to a bona fide dispute, thereby satisfying section 363(f)(4). Although the term "bona fide dispute" is not defined in the Bankruptcy Code, courts have consistently held that a bona fide dispute exists when there is "an objective basis for either a factual or legal dispute as to the validity of the debt."   *See In re Green Hills Dev. Co., LLC,* 741 F.3d 651, 658 (5th Cir. 2014) (interpreting a bona fide dispute in the context of 11 U.S.C. §303); *In re Gulf States Steel, Inc. of Ala.,* 285 B.R. 497, 507 (Bankr. N.D. Ala. 2002); *In re Octagon Roofing,* 123 B.R. 583, 590 (Bankr. N.D. Ill. 1991); *In re Bedford Square Assoc.,* 247 B.R. 140, 145 (Bankr. E.D. Pa. 2000); *In re Olympia Holding Corp.,* 129 B.R. 679, 681 (Bankr. M.D. Fla. 1991).  Although Gator claimed an M&M Lien, it failed to perform its contractual obligations in 2017, creating a bona fide dispute regarding the validity of its respective liens. *Mustang Pipeline Co. v. Driver Pipeline Co.,* 134 S.W.3d 195, 199-200 (Tex. 2004) ("It is a fundamental principle of contract law that when one party to a contract commits a material breach of that contract, the other party is discharged or excused from further performance."). Finally, as described above, bona fide disputes of fact and law exist regarding whether (a) there are any removables at the Facility subject to Mesa's claims; (b) whether Mesa breached its contractual duties; and (c) whether Mesa and its subcontractor, Chube's, failed to mitigate the Debtor's damages by removing its property from the Facility.  *See In re 9 Houston, LLC,* 578 B.R. 600, 611 n. 8 (Bankr. S.D.Tex. 2017) ("Because there is a bona fide dispute as to the amount of [the secured creditor's] lien, § 363(f)(4) also authorizes approval of the Motion despite [the secured creditor]'s opposition"). Accordingly, the M&M Liens asserted by Gator, Mesa, and are subject to a bona fide dispute, permitting a sale under section 363(f)(4).

37.     Because the provisions of section 365(f) of the Bankruptcy Code are satisfied in this case, the Trustee believes that the Court may authorize the proposed free and clear sale of the Property to the Purchaser.

## WAIVER OF STAY UNDER BANKRUPTCY RULE 6004(h)

38.     Bankruptcy Rule 6004(h) provides that "[a]n order authorizing the use, sale, or lease of property other than cash collateral is stayed until the expiration of 14 days after entry of the order, unless the court orders otherwise." FED. R. BANKR. P. 6004(h). As described above, the relief that the Trustee seeks in this Motion is necessary for the Trustee to maximize value of the Debtor's estate and to ensure the continuous monitoring of a potentially hazardous situation. Accordingly, the Trustee respectfully requests that the Court waive the fourteen-day stay imposed by Bankruptcy Rule 6004(h), as the exigent nature of the relief sought herein justifies immediate relief.

## BASIS FOR EMERGENCY CONSIDERATION

39.     Emergency consideration of this Motion is requested pursuant to Rule 9013-1(i) of the Local Rules of Bankruptcy Procedure for the Southern District of Texas.  The Estate's Property contains flammable and hazardous chemicals, which require constant monitoring, labor, and safety protocols.  The Estate lacks the financial resources to keep the Property safely functioning for an extended period.  Furthermore, estate funds that the Trustee does not expend in operating the Property may be used for the benefit of the estate and unsecured creditors Accordingly, the Trustee requests emergency consideration of the proposed transaction.

**PRAYER**

40.     Accordingly, the Trustee respectfully requests that the Court enter an order substantially in the form of the attached proposed order granting any further relief to which the Debtor may be entitled at law or in equity.

Dated:  May 19, 2020                              Respectfully submitted,

                                                  JONES MURRAY & BEATTY LLP

                                                  */s/  J. Maxwell Beatty*
                                                  J. Maxwell Beatty
                                                  Tex. Bar No. 24051740
                                                  max@jmbllp.com
                                                  4119 Montrose Blvd., Suite 230
                                                  Telephone: (832) 529-1999
                                                  Facsimile: (832) 529-3393

                                                  *Proposed Counsel for Christopher Murray, Chapter 7*
                                                  *Trustee for the Debtor*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on May 19, 2020, a true and correct copy of the foregoing document was served by the Court's Electronic Case Filing System to all parties that have requested notice in this bankruptcy case. In addition, I served a copy of the foregoing to the following parties via email:

| | |
|---|---|
| US Fire Pump Company<br>c/o **McCathern Law Firm**<br>Isaac Villareal<br>ivillarreal@mccathernlaw.com | Mesa Mechanical Inc.<br>c/o **Andrews Myers**<br>Lisa Norman<br>LNorman@andrewsmyers.com<br>Samantha Ray<br>SRay@andrewsmyers.com<br>Josh Judd<br>JJudd@andrewsmyers.com<br>W. Jason Walker<br>jwalker@andrewsmyers.com |
| DeJean Company<br>c/o **Andrews Myers**<br> Josh Judd<br>JJudd@andrewsmyers.com<br>William Wescott<br>bwestcott@andrewsmyers.com | Majesty Investments LLC<br>c/o **Coates Rose**<br>Richard Fulton<br>rfulton@coatesrose.com |
| Chubes Equipment Co.<br>c/o **McCormick, Landry, Munoz PLLC**<br>Andrew McCormick<br>andy@mmtxtrial.com | Gator Specialty Services, LLC<br>gator@gatorss.com<br>rstrange@gatorss.com |
| ALTIVIA Oxide Chemicals, LLC<br>c/o **Vinson & Elkins, LLP**<br>Harry Perrin<br>Hperrin@velaw.com<br>Kiran Vakamudi<br>kvakamuid@velaw.com | United States Attorney's Office<br>Richard.kincheloe@usdoj.gov |
| Texas Commission on Environmental Quality<br>Jason Bradley<br>Jason.binford@oag.texas.gov<br>Abigail.ryan@oag.texas.gov | Cadence Bank, NA<br>c/o Thompson Knight<br>Anthony Pirraglia<br>Anthony.pirraglia@tklaw.com<br>Cassandra Mott<br>Cassandra.mott@tklaw.com |

*/s/ J. Maxwell Beatty*